IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ANDERSON JONES,                          §
                                         §
                    Plaintiff,           §
                                         §   Civil Action No. 3:16-CV-2835-D
VS.                                      §
                                         §
ELENA PEREZ,                             §
                                         §
                    Defendant.           §

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff Anderson Jones ("Jones") under 42 U.S.C. § 1983 alleging

claims under the Fourth and Fourteenth Amendments arising from his arrest for capital

murder, the court must decide whether defendant Elena Perez ("Detective Perez"), a

detective employed by the Dallas Police Department ("DPD") who provided the probable

cause affidavit that supported the warrant for Jones's arrest, is entitled to qualified immunity.

Concluding that she is, the court grants Detective Perez's motion for summary judgement and

dismisses this action with prejudice.

I

On June 14, 2015, just before 11:00 p.m., Leonardo Ortega ("Ortega") was shot and

killed during the robbery of a Subway restaurant ("Subway") in Dallas, where Ortega

worked.[1]  After the shooting, the assailants fled the scene.  Defendant Detective Perez, a

_____

[1]In deciding Detective Perez's summary judgment motion, the court views the
evidence in the light most favorable to Jones as the summary judgment nonmovant and draws
all reasonable inferences in his favor.  *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541

detective employed in the DPD Crimes Against Persons Division,[2] was dispatched to the crime scene and assigned as lead homicide detective. Detective Perez interviewed three eyewitnesses and learned that two men had entered the Subway and robbed and shot Ortega while a third waited in the parking lot as a lookout. Although the eyewitnesses provided physical descriptions of the three men, they were unable to provide police with information regarding the suspects' identities.

On July 20, 2015 Detective Perez received an anonymous tip that a man named Christopher "Red" Miller ("Miller") was a potential witness to, and/or participant in, the June 14, 2015 murder. Miller was brought to DPD headquarters and questioned for two hours on July 31, 2015. During the interview, Detective Perez determined that Miller was "simple" and had a low IQ. P. Br. 5. He displayed difficulty spelling his middle name; spoke with an impediment; and told Detective Perez that he receives a monthly disability check, was in special education classes, and is considered MH/MR (Mental Health/Mental Retardation). Although Miller initially denied any involvement in the crime and changed his story throughout the interview, he confessed at one point that he was the lookout during Ortega's murder and that the persons who committed the robbery and murder were two individuals known as "K.T." and "Weezy." At the end of the interview, Miller was released and transported home by DPD officers.

_____

F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

[2]Detective Perez now works as an officer in the DPD.

The following day another DPD officer accompanied Miller to an apartment complex near the Subway location where, according to Detective Perez, Miller identified the person he knew as "K.T."[3] Later that day, after conducting surveillance, DPD officers made contact with the person identified as "K.T." (whom they later determined was Jones), arrested him for possession of marihuana, and transported him to DPD headquarters for investigation of the June 14, 2015 homicide.

On the same day, Miller was brought in to DPD headquarters for a second round of questioning, this time lasting approximately eight hours. During this second interview, Detective Perez requested that DPD conduct a photographic lineup so that Miller could identify whether Jones (who, at the time, was in another interview room) was the same person whom Miller had described as the shooter and referred to as "K.T." The DPD Photographic Lineup Administrator conducted a six-person sequential lineup, and Detective Perez selected the six photographs that were used. Pursuant to DPD procedures, Miller was shown each of the six photographs—one at a time and not while any other photographs were visible—and asked for each photograph: "Is this the person you saw with the gun who shot Ortega?" P. Br. 9. Miller answered "yes" for three of the six photographs, choosing three different individuals, including Jones, as the person with the gun who shot Ortega. Miller's stated reason for identifying more than one person was that he believed that they all looked like the same person. Later in the interview, Detective Perez showed Miller a single

_____

[3]Jones contends that the identification was not made by Miller but was made by his brother, Korey Miller.

- 3 -

photograph of Jones (the same picture used in the photographic lineup process earlier) and asked him to identify the person in the photograph. Miller replied, "K.T."

Also on August 1, 2015 Detective Perez interviewed Jones at DPD headquarters. During this interview, Jones denied being involved in Ortega's murder and being at the Subway on June 14, 2015, and he told Detective Perez that he was with his girlfriend at a public park near the Love Field area of Dallas, several miles from the scene of the murder. Jones acknowledged, however, that his nickname is "K.T.," that he knows Miller, that he sells marihuana at the apartments near the Subway shop, and that he knows "Red," (i.e., Miller's nickname). Detective Perez followed up with Jones's girlfriend regarding Jones's alibi and concluded that their stories did not match. For example, Jones's girlfriend stated that she picked Jones up at the bus stop at Tyler and Vernon Streets, which is near the Subway where Ortega was murdered; Jones stated that he picked up his girlfriend, went to the park, and was with her all night.

Based on her investigation, Detective Perez believed that probable cause existed to charge Jones with capital murder. She drafted an arrest warrant and accompanying probable cause affidavit ("PCA")[4] that stated, in pertinent part:

> Detective Perez received a crimestoppers tip regarding suspect Christopher Miller on 7/20/15. On 8/1/15, Detective interviewed suspect Miller who confessed to participating and planning this offense. Suspect Miller stated suspect Anderson Jones shot and killed the complainant. Suspect Miller picked

---

[4]The actual title of the PCA is "AFF[I]DAVIT FOR ARREST WARRANT." D. App. 52.

suspect Jones from a photo line up as the person with the gun, who planed and participated in the offense.

On 7/01/15, Detective Perez interviewed Jones who was uncooperative.

D. App. 52. The PCA was signed before a Dallas County magistrate on August 2, 2015, and Jones was arrested for capital murder.

On August 13, 2015—twelve days after Jones's arrest and detention for capital murder—Detective Perez's supervisors, Sergeant Joseph Garza ("Sergeant Garza") and Sergeant Calvin Johnson ("Sergeant Johnson"), met with her to discuss the status of a prosecution report due to the District Attorney's Office the following day. When Detective Perez explained to Sergeants Garza and Johnson that Miller had chosen three different people in the photographic lineup as the single person who shot Ortega, and that she then presented a single photograph "lineup" consisting only of Jones, Sergeants Garza and Johnson "instantly recognized" that Detective Perez's actions did not comply with DPD procedures regarding photographic lineups. P. Br. 19. Sergeants Garza and Johnson contacted their supervisors and advised them of the issue. Within hours, based on a review of Miller's interviews with Detective Perez, Deputy Chief Robert Sherwin ("Chief Sherwin") and Bureau Commander Gilberto Garza decided to drop the murder charges against Jones and Miller and ordered their release from custody. Jones was released from jail on the marihuana possession charge on August 17, 2015. On August 24, 2015 Chief Sherwin filed a complaint against Detective Perez with DPD's Internal Affairs Division based on her administration of a one-person photographic lineup to Miller and presenting "inaccurate and incomplete

information in an affidavit for arrest warrant." P. Br. 21.

Jones later filed the instant lawsuit against Detective Perez in her individual capacity, alleging claims under 42 U.S.C. § 1983 for false arrest, in violation of Jones's Fourth Amendment rights, and, alternatively, for deliberate fabrication of evidence, in violation of Jones's due process rights under the Fourteenth Amendment. Detective Perez moves for summary judgment based on the affirmative defense of qualified immunity. Jones opposes the motion.

## II

When a summary judgment movant will not have the burden of proof on a claim at trial, she can obtain summary judgment by pointing the court to the absence of evidence on any essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once she does so, the nonmovant must go beyond his pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

When the affirmative defense of qualified immunity is raised, "[t]he moving party is

not required to meet [her] summary judgment burden for a claim of immunity." *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (internal quotation marks and citation omitted). Rather, the movant need only plead her good-faith entitlement to qualified immunity, whereupon "the burden shifts to the plaintiff to rebut it." *Id.* (internal quotation marks, citation, and emphasis omitted); *see also Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008) (noting that when government official pleads qualified immunity, plaintiff must "rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct"). Once qualified immunity is asserted, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

## III

Qualified immunity jurisprudence is well settled. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity applies to state officials sued for constitutional violations under § 1983. *See id.* at 818 n.30 (citing *Butz v. Economou*, 438 U.S. 478, 504 (1978)); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999). "'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly

incompetent or those who knowingly violate the law.'" *Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014) (some internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

"To decide whether defendant[] [is] entitled to qualified immunity, the court must first answer the threshold question whether, taken in the light most favorable to plaintiff[] as the part[y] asserting the injuries, the facts [he has] alleged show that defendant['s] conduct violated a constitutional right." *Ellis v. Crawford*, 2005 WL 525406, at *3 (N.D. Tex. Mar. 3, 2005) (Fitzwater, J.) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry.")).[5] "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.* Finally, "[e]ven if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable."

---

[5]*Saucier*'s two-step procedure for determining qualified immunity is no longer mandatory. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts are free to consider *Saucier*'s second prong without first deciding whether the facts show a constitutional violation. *Id.* The "decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id.* at 242.

*Wallace v. Cnty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005) (citing *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998) (en banc)). "The objective reasonableness of allegedly illegal conduct is assessed in light of the legal rules clearly established at the time it was taken." *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). "'The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the' plaintiff's asserted constitutional or federal statutory right." *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001)).

IV

The court considers, first, whether Detective Perez is entitled to summary judgment on her qualified immunity defense to Jones's Fourth Amendment claim.

A

The court must decide initially whether Jones has sufficiently alleged a constitutional violation. In his complaint, Jones alleges that Detective Perez falsely arrested him, in violation of his Fourth Amendment rights, by knowingly and intentionally making false statements in the PCA and by knowingly using unreliable and inaccurate information as the alleged basis for probable cause.[6]

---

[6]Detective Perez characterizes Jones's "false arrest" claim as arising under *Malley v. Briggs*, 475 U.S. 335 (1986), in which the Supreme Court held that an officer who prepares a probable cause affidavit is entitled to qualified immunity unless, "on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. In this case, Jones was arrested pursuant to an arrest warrant. In general, an arrest based on a valid warrant "is not unconstitutional, and a complaint based on such an arrest is subject to dismissal for failure to state a claim." *Thomas v. Sams*, 734 F.2d 185, 191 (5th Cir. 1984); *see also Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982) ("Where an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest. Such an arrest is not unconstitutional, and a complaint based on such an arrest is subject to dismissal for failure to state a claim." (citations omitted)). But "[w]hile a valid arrest warrant would normally insulate officers against a claim for false arrest, in a case such as [this one] where the officer[] charged with false arrest w[as] responsible for securing the warrant, [the court is] required to test the validity of that warrant, applying the usual standards." *Mendenhall v. Riser*, 213 F.3d 226, 232 (5th Cir. 2000).

In *Franks v. Delaware* 438 U.S. 154 (1978), the Supreme Court held that an officer may violate the Fourth Amendment when, in connection with an application for a warrant, she "makes a false statement knowingly and intentionally, or with reckless disregard for the

———————————

issue." *Id.* at 341. In his summary judgment response, however, Jones clarifies that he has not brought a claim under *Malley*, i.e., a claim that no reasonable officer could have objectively concluded that probable cause existed to support the arrest warrant. *See* P. Br. 26 ("Perez is wrong; this is not a *Malley* case."). Instead, Jones limits his "false arrest" claim to the allegation that the PCA that Detective Perez prepared contained materially false and misleading statements.

truth" that results in a warrant being issued without probable cause. *Id.* at 155. "Likewise, the intentional or reckless omission of material facts from a warrant application may amount to a Fourth Amendment violation." *Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006) (citing *Hale v. Fish*, 899 F.2d 390, 400 n.3 (5th Cir. 1990)). In the context of a § 1983 claim asserting a Fourth Amendment violation, a government official is "liable for swearing to false information in an affidavit in support of [an arrest] warrant, provided that: (1) the affiant knew the information was false or [acted with] reckless disregard for the truth; and (2) the warrant would not establish probable cause without the false information." *Hart v. O'Brien*, 127 F.3d 424, 442 (5th Cir. 1997) (citing *Franks*, 438 U.S. at 171). "To determine whether facts omitted from a warrant affidavit are material to the determination of probable cause, courts ordinarily insert the omitted facts into the affidavit and ask whether the reconstructed affidavit would still support a finding of probable cause." *Kohler*, 470 F.3d at 1113 (citing *United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980)). "Probable cause cannot exist where the affidavit supporting a warrant contains material false statements or omissions that are deliberate falsehoods or evidence a reckless disregard for the truth." *DeLeon v. City of Dallas*, 345 Fed. Appx. 21, 23 (5th Cir. 2009) (per curiam) (citing *Franks*, 438 U.S. at 155-56).

B

Detective Perez moves for summary judgment on Jones's Fourth Amendment claim, contending that the summary judgment evidence shows that she had probable cause to arrest Jones for capital murder: she knew the details of the crime, including that there were three

males involved, with one who acted as a lookout, and the other two entered the Subway and robbed and shot Ortega; she received an anonymous tip that Miller may have been involved in the crime; Miller confessed that he was the lookout and that his friends "K.T." and "Weezy" committed the robbery and shooting[7]; Jones admitted that his nickname was "K.T."; during the six-person photographic lineup, Miller identified Jones along with two other non-suspects, stating that he thought they all looked like the same person; when Detective Perez later showed Miller the one-person photograph of Jones in order to confirm that Jones was the person whom Miller knew as "K.T.," Miller confirmed that the photograph was of "K.T."; and there is nothing in the summary judgment evidence that indicates that the photographic lineups were improperly suggestive. Detective Perez also argues that the facts set forth in the PCA were sufficient to establish probable cause and were not facially invalid; that the evidence does not reveal any false statements, statements made with reckless disregard for the truth, or omitted statements that were critical to the probable cause determination in the PCA; and that even if the court deleted the sentence from the PCA that mentioned the photographic lineup process, there is still adequate probable cause in the statement that "Suspect Miller stated suspect Anderson Jones shot and killed the complainant." D. Br. 12.

---

[7]In response to Jones's argument that Miller's low mental abilities should have changed Detective Perez's conclusion that Miller's statements were reliable or worthy of belief, Detective Perez contends that the circumstances she faced were unusual, there was no known departmental procedure on how to interview an adult with an apparent low IQ, and her actions were reasonable and based on her professional judgment and experience.

In his response, Jones provides the court with a revised version of the PCA that he contends includes the material facts that Detective Perez omitted. He maintains that "as presented in the revised [PCA] that includes Perez's material omissions of fact, a warrant for a Capital Murder charge against Jones based on all of the relevant information would *not* be supported by probable cause"; that the statements in the PCA that are clearly false and inaccurate should be stricken altogether; and that "[a]fter considering the PCA in this manner, it is evident that no credible facts from a reliable witness exist to support any reasonable belief of probable cause."[8] P. Br. 28. Jones next contends that Perez's claim that the lineups support probable cause is contrary to the facts and the law, and he cites testimony from at least four different DPD employees[9] that choosing three of six suspects in a photographic lineup is not a positive identification and would not support a finding of probable cause. Finally, Jones contends that Miller was not a reliable witness because there were numerous inconsistencies and inaccuracies in his various accounts of the crime—including, for example, that Miller had claimed to be in four different places at the time of the robbery, claimed his mother had been present at the incident, described the suspects as "young" and "about 16-20 years old" (Jones was 40 years old), and said the

---

[8]Jones also cites deposition testimony in which Chief Sherwin "unequivocally testified that the lack of probable cause is the precise reason for Jones' immediate release upon learning of Perez'[s] misrepresentations." P. Br. 28.

[9]Jones relies on the deposition testimony of DPD homicide detective Edward Parker, Sergeant Garza, Sergeant Johnson, and Lieutenant Roberto Arredondo.

shooter used a 9-millimeter gun to kill Ortega (the ballistics report indicated that the bullet was fired from a 32-caliber revolver)—he admitted to drinking and doing drugs before his interview; he had a low IQ; he gave constantly shifting, internally inconsistent accounts of the crime during the course of his two recorded interviews; and he was so emotionally unstable that he threatened to commit suicide more than a dozen times over the eight-hour interview and actually attempted suicide once.

Detective Perez replies that the court must determine the reasonableness of her actions from the perspective of a reasonable officer on the scene rather than with the 20/20 vision of hindsight; that other officers in the DPD confirmed that her probable cause determination was sound[10]; that Jones's recitation of the details of Detective Perez's interviews with Miller "simply underscores the fact that [Detective] Perez was faced with a decision based on a complicated investigation and set of facts, not that she made up any facts or lied about those facts," Reply 9; that each statement that Perez included in the PCA is supported by evidence; that although Miller provided somewhat confusing results from the six-person photographic lineup, he nonetheless identified Jones, along with two other non-suspects, stating that he thought they all looked like the same person; that "[j]ust because Plaintiff's evidence indicates that other officers might have reached a different conclusion about Mr. Miller's

---

[10]In support, Detective Perez relies on evidence that she includes in a supplemental appendix filed with her reply. She has separately filed a motion for leave to file supplemental appendix. Because the court has not relied on any of the evidence in Detective Perez's supplemental appendix in deciding the this motion for summary judgment, it denies Detective Perez's motion for leave to file supplemental appendix as moot.

reliability or credibility, does not amount to proof that Perez was plainly incompetent or knowingly violated the law," *id.* at 10; that Jones has not cited any authority for the proposition that Detective Perez's later showing Miller the single photograph of Jones in order to confirm that the person Miller knew as "K.T." was Jones violated Jones's clearly established constitutional right; that there is no evidence that indicates that the photographic lineups were improperly suggestive or otherwise unlawful; that the PCA was not facially invalid; that Jones's rewritten PCA does not bear any resemblance to what an adequate probable cause affidavit should say; and that none of the additional language provided in Jones's rewritten affidavit states exculpatory matters, but, instead, "merely confirms that Plaintiff's position and argument in this case is one of mere disagreement with Perez's investigatory conclusion, based on all the evidence that she knew at the time, that probable cause existed to charge Plaintiff for capital murder," *id.* at 13.

C

Jones's false arrest claim rests entirely on the premise that the PCA that Detective Perez prepared contained material misstatements and omitted crucial facts, and that, when reconstructed, the PCA does not provide probable cause that Jones committed capital murder. To defeat the affirmative defense of qualified immunity as to his Fourth Amendment-based false arrest claim under § 1983, Jones must satisfy the following elements:

> (1) the affiant included false information in or omitted material information from the affidavit and that [she] did so knowingly or with a reckless disregard of the truth; (2) the reconstructed affidavit (excluding the false information and including the omitted information) would not establish probable cause to

arrest; and (3) to overcome qualified immunity, Plaintiff[] must
show "that [no] reasonably competent officer possessing the
information that the [affiant] had at the time [she] swore [her]
affidavit could have concluded that a warrant should issue."
*Freeman v. Cnty of Bexar*, 210 F.3d 550, 553 (5th Cir. 2000).

*Johnson v. Crook*, 2014 WL 12526257, at *4 (W.D. Tex. July 9, 2014) (some alterations in

original).

The PCA states, in relevant part:

Detective Perez received a crimestoppers tip regarding suspect
Christopher Miller on 7/20/15. On 8/1/15, Detective
interviewed suspect Miller who confessed to participating and
planning this offense. Suspect Miller stated suspect Anderson
Jones shot and killed the complainant. Suspect Miller picked
suspect Jones from a photo line up as the person with the gun,
who planed and participated in the offense.

On 7/01/15, Detective Perez interviewed Jones who was
uncooperative.

D. App. 52. Jones contends that the statement that "Suspect Miller picked suspect Jones

from a photo line up as the person with the gun, who planned and participated in the offense"

is misleading because it omits the fact that Miller chose Jones and two other people as the

person who planned and participated in the offense. The court agrees that this statement is

misleading. The summary judgment evidence conclusively establishes that, in response to

the question "[i]s this the person who you saw with the gun who shot Ortega," Miller

answered yes to three different suspects (including Jones) during the six-person photographic

lineup. P. App. 52-53. When asked why he picked three different people, Miller responded

"[t]hey looked like the same." *Id.* at 54. Although Miller in fact picked Jones from a

photographic lineup as the person with the gun who shot Ortega, the court agrees that the fact that Miller also selected two other individuals as the person with the gun who shot Ortega is a material omission that under *Franks* and *Kohler* should be included in the reconstructed affidavit.

The evidence also conclusively establishes, however, that when Detective Perez later showed Miller a photograph of Jones and asked, "[w]ho's that," Miller responded "[t]hat's K.T." *Id.* at 55. Although Detective Perez's showing Miller the single photograph of Jones appears to have violated DPD photographic lineup protocol, Jones has not pointed to any evidence that would refute Detective Perez's contention that "[t]here is nothing in either Plaintiff's Complaint or the summary judgment evidence that indicates that the photographic lineups were improperly suggestive." D. Br. 9. Accordingly, for factual accuracy, the court will also include Miller's single-photograph identification of "K.T." in the reconstructed affidavit.

Jones next contends that the statement that "Suspect Miller stated suspect Anderson Jones shot and killed the complainant" is misleading because Miller actually stated that "K.T." was the shooter, and because the statement omits any mention of Miller's low IQ, his admission to drinking and doing drugs before the interview, or the numerous inconsistencies and inaccuracies in Miller's various accounts of the crime. In his brief, Jones provides *his* version of a reconstructed affidavit, in which he presumably includes every detail of Detective Perez's investigation that he believes could be exculpatory. The court agrees that, as written, the statement that "Suspect Miller stated suspect Anderson Jones shot and killed

- 17 -

the complainant" is misleading. In fact, Miller stated repeatedly that the person who shot and killed Ortega was someone known as "K.T.," and that Miller did not know K.T.'s real name. Regarding the other omissions, including that Miller had a low IQ, admitted to drinking a beer and smoking K2 before his August 1, 2015 interview, and gave inconsistent, and, at times, inaccurate accounts of the crime, the court will assume *arguendo* that these omissions are material. In doing so, however, the court notes that, in drafting the PCA, Detective Perez was not required to provide the level of detail that Jones suggests in his version of a reconstructed affidavit. *See Phillips v. City of Center, Tex.*, 2016 WL 99591, at *6 (E.D. Tex. Jan. 8, 2016) ("Put simply, Plaintiff essentially demands that Defendant Stroud detail his entire investigation in the warrant application[.] Case law, however, does not impose such a requirement." (citation omitted)); *see also Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000) ("All storytelling involves an element of selectivity. We cannot demand that police officers relate the entire history of events leading up to a warrant application with every potentially evocative detail that would interest a novelist or gossip.").

*Franks* and its progeny direct this court to reconstruct the PCA, omitting any false information, and inserting any omitted facts into the affidavit and then asking whether the reconstructed affidavit would still support a finding of probable cause. *See Kohler*, 470 F.3d at 1113. A reconstructed affidavit in this case would include the following facts: (1) Detective Perez received a crimestoppers tip regarding Miller on July 20, 2015; (2) on

August 1, 2015[11] Detective Perez interviewed Miller, who confessed to planning and participating in the offense; (3) Miller stated that someone named "K.T." shot and killed the complainant; (4) Miller has a low IQ and confessed to having had a beer and smoking K2 before his August 1, 2015 interview; (5) Miller's account of the crime was inconsistent and, at times, inaccurate; (6) Miller picked three suspects (including Jones) from a six-person photograph lineup up as the person with the gun, who planned and participated in the offense, and later identified Jones, when shown a single photograph, as the person he knew as "K.T."

The court next considers whether the reconstructed affidavit would still support a finding of probable cause. "The Supreme Court has defined probable cause as the facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (internal quotation marks and citations omitted).

> Furthermore, [the Fifth Circuit] has stated that probable cause "does not demand any showing that [the belief that an offense was committed] be correct or more likely true than false," because "the probable cause analysis only requires that [the court] find a basis for an officer to believe to a 'fair probability' that a violation occurred."

*Winston v. City of Shreveport*, 390 Fed. Appx. 379, 383 (5th Cir. 2010) (per curiam) (some alterations in original) (quoting *Piazza v. Mayne*, 217 F.3d 239, 246 (5th Cir. 2000)).

---

[11]Miller's interview actually began at 11:18 p.m. on July 31, 2005.

The court concludes that the reconstructed PCA supports a finding of probable cause. Although Miller's version of the crime was at times inconsistent and inaccurate regarding certain details, and even though the results of the photographic lineup could best be described as inconclusive, a reasonable officer could nevertheless believe to a fair probability, based on the undisputed facts of the crimestoppers tip, Miller's confession that he was involved in the offense, Miller's repeated statements that a man named "K.T." shot and killed Ortega, and Miller's identification of Jones as "K.T.," that Jones murdered Ortega. Accordingly, because the reconstructed PCA would still support a finding of probable cause, the court concludes that Jones has failed to meet his burden under *Franks*. And because Jones has not established a violation of any constitutional right, Detective Perez is entitled to summary judgment on Jones's Fourth Amendment based § 1983 claim based on qualified immunity.[12]

D

Alternatively, the court concludes that Detective Perez is entitled to qualified immunity as to Jones's Fourth Amendment claim because her conduct was objectively reasonable. *See Wallace*, 400 F.3d at 289 ("Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable.").

---

[12]Because the court concludes that Jones has not established that his Fourth Amendment rights were violated, it does not address Detective Perez's contention that the magistrate's finding of probable cause "breaks the chain of causation" for any constitutional violation, D. Br. 12, or that because Jones was already lawfully arrested on the marihuana possession charge and makes no complaint about that charge in this case, probable cause for Jones's arrest existed on August 1, 2015.

When it is alleged that an official provided false information (or omitted material information) to secure an arrest warrant, a § 1983 plaintiff is required to "demonstrate an issue of material fact as to whether any reasonably competent officer possessing the information that each officer had at the time [she] swore [her] affidavit could have concluded that a warrant should issue." *Freeman*, 210 F.3d at 553 (citing *Malley*, 475 U.S. at 341). The court "must look to the totality of circumstances in making this decision." *Id.* (citing *Illinois v. Gates*, 462 U.S. at 238-39). "[E]ven if officers of reasonable competence could disagree on this issue, [Detective Perez is] still entitled to qualified immunity. *Id.* (citing *Malley*, 475 U.S. at 341). "'The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have known that the defendant's conduct violated the' plaintiff's asserted constitutional or federal statutory right." *Cozzo*, 279 F.3d at 284 (quoting *Thompson*, 245 F.3d at 457).[13] A "police officer who reasonably but mistakenly concludes that he has probable cause to arrest a suspect is entitled to qualified immunity." *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005).

At the time Detective Perez swore to the PCA, a reasonable officer could have

---

[13]Jones maintains that the court should conclude, based on the evidence, that "no reasonable officer could have considered [Detective] Perez's actions in making false and misleading statements and omissions in her Affidavit to be lawful, and in fact, the officers in her chain of command unanimously condemned these actions." P. Br. 37. But this is not the proper inquiry. At this stage of the qualified immunity analysis, the court does not ask whether a reasonable officer would have known that making false representations and material omissions in a probable cause affidavit is unlawful; instead, the court asks whether a reasonable officer would have determined, based on the available information, that a warrant should issue. *See Freeman*, 210 F.3d at 553 (citing *Malley*, 475 U.S. at 341).

concluded, based on the available information, that a warrant for Jones's arrest should issue. *See Freeman*, 210 F.3d at 553. Detective Perez knew, based on the observations of eyewitnesses, that there were three males involved in the crime (one who acted as a lookout, and two who entered the Subway, where Ortega was robbed and shot); she later received an anonymous tip that Miller may have been involved in the crime; over the course of two days, Miller was interviewed and confessed that he was the lookout and that his friends "K.T." and "Weezy" committed the robbery and shooting; during a police interview, Jones admitted that his nickname was "K.T."; during a six-person photographic lineup, Miller identified Jones and two other non-suspects as the person he saw with the gun who shot Ortega; and when Detective Perez later showed Miller the one-person photograph of Jones, Miller confirmed that the person in the photograph was "K.T." Moreover, Jones and his girlfriend provided inconsistent versions of Jones's actions on the night of the murder. Jones's girlfriend stated that she picked Jones up at a bus stop located near the Subway where Ortega was murdered; Jones stated that he picked up his girlfriend, went to the park, and was with her all night.

Despite Miller's apparent low IQ, his confusing response to the six-person photographic lineup, and the inconsistent and, at times, inaccurate descriptions of the crime,[14]

---

[14]Jones has identified at least the following inconsistencies and inaccuracies: Miller claimed to be in four different places at the time of the robbery and murder ; Miller described the suspects as "young," and "about 16-20 years old," while Jones is age 40; Miller stated that the shooter used a 9-millimeter gun to kill Ortega, while the ballistics report indicated that the bullet was fired from a 32-caliber revolver; Miller claimed the lights were off in the Subway when Detective Perez knew they were on; Miller gave a different description of the clothing Jones wore than the description given by the eyewitnesses; Miller indicated that Jones and Weezy drove to the Subway in a truck, but the video evidence does not corroborate

the court cannot hold that *all* reasonable officers would have concluded, based on the information available, that probable cause did not exist to arrest Jones for capital murder.[15] Accordingly, for this alternative reason, Detective Perez is entitled to summary judgment on Jones's Fourth Amendment claim based on qualified immunity.

V

The court now turns to Jones's alternative substantive due process claim, which is based on the allegation that, under *Cole v. Carson*, 802 F.3d 752 (5th Cir. 2015), *vacated sub nom. Hunter v. Cole*, ___ U.S. ___, 137 S.Ct. 497 (2016), Jones has a Fourteenth Amendment right "not to have law enforcement deliberately fabricate evidence, including the insertion of facts in affidavits and arrest documents for the purpose of serving an indictment that Defendant knows to be false." Compl. ¶ 22.

───────────────

this detail; and Miller "gave constantly shifting, internally inconsistent accounts of the crime during the course of his two recorded interviews [and] was so emotionally unstable that he threatened suicide more than a dozen times over the eight-hour interview, and actually attempted suicide once," P. Br. 35.

[15]In his response, Jones cites evidence that Chief Sherwin "has unequivocally testified that the lack of probable cause is the precise reason for Jones'[s] immediate release upon learning of Perez'[s] misrepresentations," P. Br. 28; that DPD homicide detective Edward Parker testified "that he would never swear under oath to a magistrate that Christopher Miller picked Jones out of a photo lineup as the person with the gun who planned and participated in the offense," *id.* at 30-31; that "Detectives Garza and Parker, as well as Lt. Arredondo, testified that a witness choosing three of six suspects is not a clean lineup and that they would not use those results as a basis for probable cause," *id.* at 31; and that "Sgt. Garza would never go to a judge and say that Christopher Miller picked Jones out of the lineup as the basis for probable cause under the facts of this case," *id.* Although this evidence clearly establishes that reasonable officers would disagree, based on the available information, as to whether probable cause existed to arrest Jones, it is insufficient to establish that *all* reasonable officers would conclude that probable cause was lacking.

Detective Perez moves for summary judgment on this claim on the following grounds: the PCA did not violate Jones's constitutional rights because none of the statements contained therein is false; when the totality of the circumstances is considered, Miller's identification of Jones as the criminal was fair and reliable; *Cole* is inapplicable because in that case, police unquestionably deliberately fabricated evidence in order to justify their shooting a seventeen-year-old suspect who was holding a gun to his head, and the Fifth Circuit allowed a Fourteenth-Amendment due process claim to proceed under those facts, holding that "where there is no more specific constitutional protection available, the Fourteenth Amendment *may* offer protection," D. Br. 16 (quoting *Cole*, 802 F.3d at 772); because the Fourth Amendment protects against the type of conduct alleged in the complaint, Jones's claim is "covered by" the Fourth Amendment and should be analyzed only under that constitutional provision; because *Cole* was not decided until *after* Jones's arrest, detention, and release, the *Cole* doctrine was not clearly established law at the time Detective Perez prepared the PCA; and there is no evidence that Detective Perez intentionally fabricated evidence.

Jones responds that "the evidence Jones presents in his appendix demonstrates that Perez violated his right guaranteed by the Fourteenth Amendment not to have law enforcement deliberately fabricate evidence, as Perez did with the misstatements and omissions in her Affidavit," P. Br. 38; that he is not attempting to have "two bites at the constitutional apple," because he has pleaded his Fourteenth Amendment claim in the

- 24 -

alternative; that the conduct actually at issue in *Cole* occurred in 2010, and the Fifth Circuit determined that, by 2010, the wrongfulness of charging someone on the basis of deliberately fabricated evidence is sufficiently obvious that a reasonable officer would have known that such conduct violates the Constitution; and Detective Perez's own testimony confirms that, when she prepared the PCA, she knew that she could not misrepresent the facts to a judge for the purpose of establishing probable cause and obtaining a warrant, and she could not create a false impression with a judge for the purpose of establishing probable cause.

B

"Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Jones's alternative substantive due process claim is based on the allegation that Detective Perez

> knowingly and deliberately made false statements in her probable cause affidavit for Plaintiff's arrest warrant by stating that suspect Christopher Miller had identified Plaintiff Jones as the person who shot and killed Leonardo Ortega, based on a photo line-up. On the basis of this false statement, the magistrate signed the warrant for Jones's arrest, the District Attorney's office initiated a murder prosecution against Jones, Jones was jailed for seventeen days on the charge, and the murder case proceeded for seventeen days before charges were finally dropped and Jones was released from jail.

Compl. ¶ 23. This is the same factual basis that Jones relies on to support his Fourth

Amendment claim. As explained above, the Fourth Amendment protects against "unreasonable . . . seizures" by the government and the issuance of warrants absent probable cause. Because the Fourth Amendment protects against the type of conduct Jones alleges in support of his substantive due process claim, this claim is "covered by" the Fourth Amendment and should be analyzed only under that constitutional provision. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998); *see also Wilson v. Birnberg*, 667 F.3d 591, 599 (5th Cir. 2012) ("To the extent that [plaintiff] seeks to assert a distinct cause of action under substantive due process, that claim must fail. . . . Here, [plaintiff's] claims are rooted in procedural due process, the Equal Protection Clause, and the First Amendment. Those provisions are our exclusive guideposts." (citations omitted)).[16]

Jones contends that, under the Fifth Circuit's decision in *Cole*, his substantive due process claim is not foreclosed by *Albright*. In *Cole* the court held that although "there is no 'substantive right under the Due Process Clause of the Fourteenth Amendment to be free from criminal prosecution except upon probable cause,'" *Cole*, 802 F.3d at 765 (quoting *Albright*, 510 U.S. at 268), "[w]here police intentionally fabricate evidence and successfully get someone falsely charged with a felony as a cover for their colleagues' actions, and the Fourth Amendment is unavailing, there may be a due process violation," *id.* at 773. *Cole* is inapplicable in this case. In *Cole* the plaintiffs alleged that the police officers who had shot a seventeen-year-old suspect who was holding a gun to his head *deliberately* made false

---

[16]It is immaterial that the court today grants summary judgment on Jones's Fourth Amendment claim based on Detective Perez's entitlement to qualified immunity.

statements to investigators that the suspect had aimed his gun at one of the officers and that the officer warned the suspect before shooting, and, as a result, charges were brought against the suspect for the felony offense of aggravated assault on a public servant. *Cole*, 802 F.3d at 763-64. Even assuming *arguendo* that the statements in the PCA were inaccurate, Jones has adduced no evidence that Detective Perez intentionally fabricated evidence in order to frame Jones. Although Jones contends that "the evidence Jones presents in his Appendix demonstrates that [Detective] Perez violated his right guaranteed by the Fourteenth Amendment not to have law enforcement deliberately fabricate evidence, as [Detective] Perez did with the misstatements and omissions in her Affidavit," P. Br. 38, he fails to cite any evidence of deliberate fabrication. Nor do the following establish that Detective Perez deliberately fabricated evidence in this case: Detective Perez's admission that she knew when she prepared the PCA that she could not misrepresent the facts to a judge for the purpose of establishing probable cause and obtaining a warrant; her admission that she knew that she could not assert facts with a reckless disregard for the truth for the purpose of establishing probable cause; or her admission that she knew she could not use as a basis for probable cause the statements of a witness she knew to be unreliable. Accordingly, the court concludes, at least for this reason, that *Cole* is inapplicable. Because *Albright* precludes Jones's substantive due process claim, the court concludes that Jones has not established a violation of his Fourteenth Amendment rights, and, accordingly, Detective Perez is entitled to summary judgment on Jones's substantive due process claim based on qualified immunity.

\*    \*    \*

According, for the reasons explained, the court grants Detective Perez's motion for summary judgment and dismisses this action with prejudice by judgment filed today.

**SO ORDERED**.

September 25, 2017.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE